UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| NEW CINGULAR WIRELESS PCS, LLC, D/B/A AT&T MOBILITY, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>KOOTENAI COUNTY, IDAHO,<br><br>Defendant. | Case No. 2:23-cv-00124-AKB<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Plaintiff New Cingular Wireless, PCS, LLC d/b/a AT&T Mobility ("AT&T") seeks judicial review under the Telecommunications Act of 1996, 47 U.S.C. § 332(c)(7) of a determination by Kootenai County, Idaho.  AT&T challenges the County's February 2023 denial of AT&T's application for a conditional use permit ("CUP") to build a wireless communication tower.   AT&T seeks injunctive relief and declaratory relief and requests expedited review based on the following four causes of action:  (1) the County's determination was an unlawful prohibition of service; (2) the County's determination was not based on substantial evidence; (3) the County's failure to take action on AT&T's application until more than 150 days after submission of the completed application violated the federal "Shot Clock" rules governing the construction of wireless communication towers; and (4) the County's determination violated Idaho's land use statutes regarding the procedure on motions for reconsideration.

Soon after this action was filed, Potlatch Hill Neighborhood Group and individuals Alissa Desancic, Joel Bowlby, Laureen Metcalf, Izzet Motola, and Ginny Tate (collectively "Potlatch Hill" or "putative intervenors") filed a Motion to Intervene, seeking to join the County in defending its denial of AT&T's application. The Court heard oral argument on August 23, 2023. For the reasons set forth below, the Court will deny the Motion to Intervene.

## BACKGROUND

In June 2022, AT&T applied for a conditional use permit from the County to construct and operate a 150-foot wireless communication facility on a 7.13-acre undeveloped parcel south of the intersection of E. Potlatch Hill Road and E. Sky Harbor Drive in Kootenai County, Idaho. The County held public hearings on the CUP application on August 4, 2022, and September 8, 2022. At both hearings, AT&T offered an overview of the project, including visual simulations and engineering information. The Potlatch Hill Neighborhood Group, which is comprised of more than 250 residents, and other members of the neighboring public attended both hearings to oppose the proposed facility. Some issues they raised in opposition included concerns about visual intrusions, aesthetics, dangers associated with lightning strikes, the inadequacy of existing roads and other infrastructure to handle construction and operation of the town, increased light noise, reductions in the values of nearby properties, the adequacy of existing communication services, and potential alternative sites.

On September 29, 2022, the Board of Kootenai County Commissioners, with all three commissioners present, held another public hearing. On October 27, 2022, the Board approved the CUP application by a 2-1 vote, with Commissioner Duncan opposed. Multiple requests for reconsideration were filed, including by the putative intervenors, and a reconsideration hearing was held on January 12, 2023. After the reconsideration hearing, the Board issued a written decision on February 28, 2023, granting reconsideration and denying the CUP application.

MEMORANDUM DECISION AND ORDER - 2

On March 29, 2023, AT&T filed its Complaint for Declaratory and Injunctive Relief and Request for Expedited Review Pursuant to 47 U.S.C. § 332(c)(7)(B)(v), challenging the denial of the CUP application, and on April 20, 2023, the County filed its Answer.  On June 29, 2023, Potlatch Hill then filed its amended motion seeking to intervene in this action and a proposed Answer.

Putative intervenors are groups and individuals who oppose the construction of the wireless communication facility.  They own property near the proposed facility.  As noted, putative intervenors advocated against approval of the proposed facility during the multiple hearings on the application and spearheaded the requests for reconsideration.  They seek to defend the County's denial of the application to construct and operate the facility and move to intervene as of right. Alternatively, they argue that the Court should allow permissive intervention.  They move to intervene as one group and are represented by the same counsel.  AT&T opposes the motion, although it concedes that the motion to intervene is timely.  The County has filed a statement of non-opposition.

## LEGAL STANDARD

The Federal Rules of Civil Procedure permit a party to intervene as of right under Rule 24(a) and permissively under Rule 24(b).  *Cooper v. Newsom*, 13 F.4th 857, 864 (9th Cir. 2021).  The Ninth Circuit has distilled this provision into a four-part test:

> (1) the application for intervention must be timely; (2) the applicant must have a 'significantly protectable' interest relating to the property or transaction that is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect that interest; and (4) the applicant's interest must not be adequately represented by the existing parties in the lawsuit.

*Animal Legal Def. Fund v. Otter*, 300 F.R.D. 461, 464 (D. Idaho 2014) (citing *Southwest Center for Biological Diversity v. Berg*, 268 F.3d 810, 817 (9th Cir. 2001)).

MEMORANDUM DECISION AND ORDER - 3

"In evaluating whether these requirements are met, courts are guided primarily by practical and equitable considerations." *Callahan v. Brookdale Senior Living Cmty., Inc.*, 42 F.4th 1013, 1020 (9th Cir. June 29, 2022) (internal quotation marks and citation omitted).  Although courts construe Rule 24(a) broadly in favor of proposed intervenors, *id.*, an applicant seeking intervention bears the burden of proving that these requirements are met.  *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011).  "Failure to satisfy any one of the requirements is fatal to the application." *Perry v. Prop. 8 Official Proponents*, 587 F.3d 947, 950 (9th Cir. 2009).

By contrast, permissive intervention under Rule 24(b) requires only that the proposed intervener have a question of law or fact in common with the underlying action; the request be timely made; and the court have an independent basis for jurisdiction over the proposed intervener's claims.  Fed. R. Civ. P. 24(b). When ruling on a motion for permissive intervention under Rule 24(b), a district court "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."  *Dep't of Fair Emp. & Hous. v. Lucent Techs., Inc.*, 642 F.3d 728, 741 (9th Cir. 2011) (quoting Fed. R. Civ. P. 24(b)).  "Even if an applicant satisfies those threshold requirements, the district court has discretion to deny permissive intervention." *Cooper*, 13 F.4th at 868 (quoting *Donnelly v. Glickman*, 159 F.3d 405, 412 (9th Cir. 1998)).

## ANALYSIS

### A.  Intervention as of Right

Challenging Potlatch Hill's request to intervene as a matter of right, AT&T focuses on the second and fourth factors—i.e., AT&T argues that (1) Potlatch Hill does not have a significantly protectable interest relating to the property or transaction; and (2) it cannot establish the County will not adequately represent its interests.

MEMORANDUM DECISION AND ORDER - 4

1.   *Protectable Interest*

"[T]he interest test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Wilderness Soc'y v. United States Forest Serv.*, 630 F.3d 1173, 1179 (9th Cir. 2011) (internal quotation marks and citations omitted).  "Whether an applicant for intervention as of right demonstrates sufficient interest in an action is a practical, threshold inquiry, and no specific legal or equitable interest need be established."  *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 837 (9th Cir. 1996) (quoting *Greene v. United States*, 996 F.2d 973, 976 (9th Cir. 1993)) (internal quotation marks and brackets omitted).  Instead, "[t]o demonstrate a significant protectable interest, an applicant must establish that the interest is protectable under some law and that there is a relationship between the legally protected interest and the claims at issue." *Citizens for Balanced Use*, 647 F.3d at 897.

Potlatch Hill meet these requirements because public interest groups have an interest in challenging the legality of a measure the group has supported.  *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1397 (9th Cir. 1995); *see also Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 527 (9th Cir. 1983).  In *Sagebrush Rebellion*, the Ninth Circuit held that the National Audubon Society, as well as other related groups and individuals, had a protectable interest in defending the legality of a conservation area for birds in Idaho.  The applicants were interested in the preservation of birds and their habitats and had "participated actively in the administrative process" that led to the creation of the conservation area under federal law.  *Id.* at 526-27.  In finding the group held a protectable interest, the Ninth Circuit stated in broad terms that "a public interest group [is] entitled as a matter of right to intervene in an action challenging the legality of a measure which it had supported."  *Id.* at 527. Further, the Ninth Circuit explained, an adverse decision against the conservation area "would impair the society's interest in the preservation of birds and their habitats," an interest the conservation area was designed to protect.  *Id.* at 528.

In 2006, The Ninth Circuit applied the rule in *Sagebrush Rebellion* to an individual who was the chief petitioner of a ballot initiative. *Prete v. Bradbury*, 438 F.3d 949, 954-55 (9th Cir. 2006). The rule was also applied to a group (the Oregon AFL-CIO) that supported the initiative. *Id.* After the ballot initiative was approved by voters, it was challenged. The applicants moved to intervene to defend the initiative. *Id.* at 951-52. The individual, as "chief petitioner for the measure," and the group, as "a main supporter of the measure," had interests sufficient to satisfy this prong of the Rule 24(a)(2). *Prete*, 438 F.3d at 955. *See also Washington State Bldg. & Constr. Trades v. Spellman*, 684 F.2d 627, 630 (9th Cir. 1982) (holding public interest group that sponsored the challenged initiative had sufficiently protectable interest in defending its constitutionality and was entitled to intervention as a matter of right under Rule 24(a)); *State of Idaho v. Freeman*, 625 F.2d 886, 887 (9th Cir. 1980) (holding public interest group had sufficiently protectable interests in a cause which that organization had championed).

Here, Potlatch Hill Neighborhood Group and the individual proposed intervenors have shown that they played an important role in convincing the County to reconsider its decision approving the CUP application, and therefore the County's decision reflects a measure Potlatch Hill Neighborhood Group has supported. *Idaho Farm Bureau*, 58 F.3d at 1397; *see also Los Angeles SMSA Ltd. P'ship v. City of Los Angeles, California*, 817 F. App'x 350, 351 (9th Cir. 2020) ("*Los Angeles SMSA II*") (finding neighborhood association that opposed wireless company's permit application to build a wireless tower had "significantly protectable" interests relating to the city's decision denying the application). "This interest has the requisite 'relationship' to this action because if [AT&T] succeeds, the residents' use and enjoyment of their land 'may, as a practical matter, be impaired.'" *Los Angeles SMSA Ltd. P'ship v. City of Los Angeles, California*, 2019 WL 4570012, at *6 (C.D. Cal. July 31, 2019) (quoting *Citizens for*

*Balanced Use*, 647 F.3d at 898), *aff'd in part, appeal dismissed in par*t, 817 F. App'x 350 (9th Cir. 2020) ("*Los Angeles SMSA I*").  Potlatch Hill therefore has established that putative intervenors have "a significant protectable interest" related to this action, and an adverse judgment may impair or impede that interest.

### 2.  *Adequacy of Representation*

Potlatch Hill's application to intervene as a matter of right fails on the fourth factor, however, because it fails to show the County will not adequately represent its interests.  To establish inadequate representation, Potlatch Hill needs to make a "very compelling showing" because:  (1) a governmental entity—the County—is already acting on behalf of its interests in this action; and (2) the County and Potlatch Hill share the same ultimate objective of defending and upholding the County's decision denying AT&T's application to construct and operate a wireless facility.  *Oakland Bulk & Oversized Terminal, LLC v. City of Oakland*, 960 F.3d 603, 620 (9th Cir. 2020) (citing *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003)); *see also Los Angeles SMSA II*, 817 F. App'x at 351 (city defendant and proposed intervenors shared the same "ultimate objective" of defending decision denying a CUP application to construct and operate a wireless tower, and therefore a very compelling showing was required to rebut presumption of adequacy).

Potlatch Hill fails to meet this heightened threshold.  Potlatch Hill argues that the County will not adequately represent its interests, and its participation in this lawsuit is necessary because the County initially granted the CUP application and only reconsidered its decision after Potlatch Hill "filed multiple requests for reconsideration" and that it would be "unreasonable" to assume the County will not go back to its original position when it approved the CUP application.  The Court is not convinced by this argument.

First, in making this argument, Potlatch Hill "reiterates" that its burden of showing inadequate representation by the County is "**minimal**." But this argument misstates Potlatch Hill's burden.  Because the County and Potlatch Hill share the same "ultimate objective" and because the County is acting on behalf of the constituency it represents, a presumption of adequate representation exists.  Based on this presumption, the County is assumed to adequately represent Potlatch Hill's interests absent a "very compelling showing to the contrary."  *See Prete*, 438 F.3d at 957 (quoting *Arakaki*, 324 F.3d at 1086).

To be sure, not all cases in which a government party and putative intervenor share the "same ultimate objective" result in a finding that the government will adequately represent the interest of the intervenor-applicants.  For example, in *Citizens for Balanced Use*, three conservation groups sought to intervene as defendants on the side of the government in an action brought by an advocacy group challenging an interim order issued by the United States Forest Service limiting snowmobiles and other motorized vehicles. 647 F.3d at 895. The Forest Service only "reluctantly" adopted the challenged interim order "under compulsion of a district court decision gained by the [intervenor-applicants'] previous litigation," *and* the Forest Service sought to overturn on appeal "the very court decision that forced it to adopt the Interim Order." *Id.* at 899. Under these facts, the Ninth Circuit found that the intervenor-applicants had made a "compelling showing" of inadequate representation. *Id.*

By contrast, Potlatch Hill presents no evidence suggesting the County only "reluctantly" denied AT&T's CUP application "under compulsion" of a court order, or that the County's initial approval of the application will lead it to stake out an undesirable legal position in this litigation. *See Oakland*, 960 F.3d at 620 (citing *Prete*, 438 F.3d at 957-58) (applicant must proffer sufficient "evidence" to show that government will take undesirable legal position).  In fact, at oral argument

Potlatch Hill not only conceded the County and Potlatch Hill share the same ultimate objective, but also it also conceded it had "every hope and expectation" the County will do "an excellent job" representing its interests and upholding the decision it made. Potlatch Hill's assertion its interests and the County's interests might diverge again in the future is therefore based on pure speculation and does not justify Potlatch Hill's intervention as a full-fledged party in this litigation. *See Prete*, 438 F.3d at 957; *c.f. Freedom from Religion Found. v. Geithner*, 644 F.3d 836, 842 (9th Cir. 2011) (concluding "mere possibility" that federal defendants might decline to appeal is insufficient to rebut presumption of adequate representation).

Instead, this case is analogous to *Los Angeles SMSA II*, in which the Ninth Circuit affirmed the district court's holding that the intervenor-applicant failed to make a "compelling showing" to overcome the presumption of adequate representation. 817 F. App'x at 352. In that case, the City of Los Angeles denied Verizon's application to build a wireless communication tower, and Verizon sought judicial review of that decision under the Telecommunications Act of 1996. *Los Angeles SMSA I*, 2019 WL 4570012, at *1. The city's zoning administrator, however, initially had approved the application and issued a permit to Verizon to build the tower; and only after the putative intervenor, a neighborhood association opposed to the tower, "spearheaded an appeal" of the city's approval decision, did the city change course and deny the application. *Id.* at *2. Despite that the city—like the County here—had initially approved the application, the Ninth Circuit found the neighborhood association failed to make a "compelling showing" of inadequate representation. The same reasoning controls in this case.

Nonetheless, Potlatch Hill contends the County's representation will be inadequate because the County "will likely <u>not</u> focus on testimony and related to Intervenors' unique and personal interests . . . ." (Dkt. 17-1 at p. 10). Potlatch also says it may file a motion for summary judgment,

and the County may not.  But "mere differences in litigation strategy are not enough to justify intervention as a matter of right." *Animal Legal Def. Fund*, 300 F.R.D. at 465 (quoting *Perry*, 587 F.3d at 954).  That the County may seek to defend its decision on different grounds than Potlatch Hill "is not a compelling showing that overcomes the presumption of adequate representation." *Animal Legal Def. Fund*, 300 F.R.D. at 465.  *See also Los Angeles SMSA II*, 817 F. App'x at 352 (citing *Perry*, 587 F.3d at 954).  "The presumption of adequacy thus remain[s] intact." *Oakland*, 960 F.3d at 620.

In sum, although "intervention as of right does not require an absolute certainty that a party's interests will be impaired or that existing parties will not adequately represent its interests," *Citizens for Balanced Use*, 647 F.3d at 900, it does require a compelling showing the County is an inadequate representative for Potlatch Hill's interests.  Potlatch has not made that showing.

### B.  Permissive Intervention

On a "timely motion, the court may permit anyone to intervene who:  (A) is given a conditional right to intervene by a federal statute; or (B) has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b).  "In exercising its discretion the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."  *Id.*  When a proposed intervenor has met those requirements, "[t]he court may also consider other factors in the exercise of its discretion, including the nature and extent of the intervenors' interest' and 'whether the intervenors' interests are adequately represented by other parties." *Perry*, 587 F.3d at 955 (citation and internal quotation marks omitted).

Permissive intervention is not warranted in this case.  While the Court finds Potlatch Hill meets all the requirements for permissive intervention, Potlatch Hill's participation may expand the scope of the proceedings, resulting in delay.  The parties have agreed to an "Expedited Track,"

with limited discovery and dispositive motions to be filed on December 1, 2023.  *C.f.*, *Stupak-Thrall v. Glickman*, 226 F.3d 467, 474 n.8 (6th Cir. 2000) (recognizing that a case's expedited track is relevant to timeliness analysis).  Although Potlatch Hill states "the litigation plan agreed to by the existing parties will *likely* not require alteration following intervention," the possibility exists that the situation could evolve after its intervention.  *Los Angeles SMSA I*, 2019 WL 4570012, at *9.  Regardless, even if Potlatch Hill's participation would not delay or prejudice the proceedings, the Court would still deny the request for permissive intervention for the same reason it denied Potlatch Hill's application to intervene as a matter of right:  Potlatch Hill's and the County's interests are identical, and the County can adequately represent those interests.  *See, e.g.*, *Animal Legal Def. Fund*, 300 F.R.D. at 465.

Because the County will adequately represent Potlatch Hill's interests, and because Potlatch's participation in this matter as a party may expand the scope of these proceedings, leading to delay, the Court will deny Potlatch Hill's request for permissive intervention.

## ORDER

**IT IS ORDERED that:**

1.  Potlatch Hill Neighborhood Group and individuals Alissa Desancic, Joel Bowlby, Laureen Metcalf, Izzet Motola, and Ginny Tate's Amended Motion to Intervene (Dkt. 17) is DENIED.

2.  Potlatch Hill Neighborhood Group and individuals Alissa Desancic, Joel Bowlby, Laureen Metcalf, Izzet Motola, and Ginny Tate's Motion to Intervene (Dkt. 15) is DENIED as MOOT.

DATED: November 02, 2023

Amanda K. Brailsford
U.S. District Court Judge

**MEMORANDUM DECISION AND ORDER - 11**